**IT IS ORDERED as set forth below:**



Date: June 27, 2017

_____
**Wendy L. Hagenau**
**U.S. Bankruptcy Court Judge**

_____

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CASE NO. 11-85593-WLH |
| | ) | |
| JOYCE HILL, | ) | CHAPTER 13 |
| | ) | |
| Debtor. | ) | JUDGE WENDY L. HAGENAU |
| | ) | |
| | ) | |
| JOYCE HILL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ADV. PROC. NO. 17-5003 |
| | ) | |
| GREENTREE SERVICING, LLC and | ) | |
| DITECH FINANCIAL LLC, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

### ORDER AND JUDGMENT

This matter is before the Court on Plaintiff's Complaint to Determine Extent of Lien Rights in Property and for Declaratory Judgment, after briefing by the parties. This Court has jurisdiction of this matter under 28 U.S.C. §§ 1334 and 157 and this matter is a core one under 28 U.S.C. § 157(b)(2)(K).

1

## FACTS

The Debtor Joyce Hill filed a Chapter 7 petition on December 9, 2011, with Edward Danowitz as her counsel. Ms. Hill was and remains a "below median income" debtor because her current monthly income is less than the median family income for the State of Georgia for a single individual. During the Chapter 7 case, the Debtor filed a motion to redeem a mobile home. The Court entered an order on January 27, 2012, providing for the mobile home to be redeemed with a payment of $18,132. The Debtor could not make the payment required under the redemption order so she converted the case to one under Chapter 13 on February 21, 2012 in order to pay the value of the mobile home over time. Mr. Danowitz represented her in the conversion and in the Chapter 13 case.

After the case was converted to one under Chapter 13, the Debtor filed her first proposed plan. This plan stated the Debtor would pay $398 per month to the Trustee by direct payment for the "applicable commitment period of 58 months, unless all allowed claims in every class, other than long-term claims, are paid in full in a shorter period of time." The plan also proposed to pay $1,500 in attorneys' fees and provided the Chapter 13 Trustee would receive a fee for each disbursement at the percentage fixed by the United States Trustee. The plan fixed the value of the mobile home at $18,132 plus 5% interest. The plan anticipated $348 per month being paid to Greentree Servicing, Inc. ("Greentree"), the holder of the lien on her mobile home, and the remaining $50 per month being paid to her attorney. The plan contemplated a 0.01% distribution to unsecured creditors.

The plan was amended on May 16, 2012 to change the applicable commitment period from 58 months to 48 months. The monthly payment of $398 did not change. The amended plan provided Mr. Danowitz would receive total attorneys' fees of $2,500, $1,500 of which had been paid prior to the conversion. Only $1,000 remained to be paid to Mr. Danowitz through the

2

plan. Trustee fees would also be paid under the terms of the plan. Greentree was to receive the same $348 per month as proposed in the original plan, to pay the secured claim of $18,132 plus 5% interest. This amended plan provided zero dollars to unsecured creditors. The amended plan was confirmed on June 14, 2012 (the "Plan").

After the Debtor made 46 payments relatively uneventfully, the Debtor missed a payment. The Debtor had miscalculated when the first payment had been made and thought she had made all 48 required payments. The Trustee filed a motion to dismiss and at this point the Debtor became aware that mathematically 48 payments would not pay for everything provided for under her Plan. At $398 per month for 48 months, the total amount paid into the Plan would be $19,104. Since Greentree was to be paid $18,132, insufficient funds remained to pay Debtor's counsel in full, or pay the Chapter 13 Trustee fees, or pay the 5% interest to Greentree. The Debtor then filed a motion for a hardship discharge on July 7, 2016 [Main Case Docket No. 73] which the Court granted on November 29, 2016 [Main Case Docket No. 74]. The Trustee filed a Final Report showing the Debtor paid $19,104 into the Plan, of which $1,000 was paid to counsel, $953.60 was paid to the Trustee, $2,025.63 was paid to Greentree in interest, and $15,124.77 was paid to Greentree in principal.

In the meantime, the Debtor filed this adversary proceeding, in which the Debtor sought to determine the amount owed to Greentree was $3,007.23 in principal. Plaintiff asked the Court to direct Greentree to release its lien on the mobile home upon the payment of this amount. Ditech Financial LLC f/k/a Greentree[1] responded to the complaint denying the relief requested by Plaintiff (hereinafter referred to as "Ditech").

The Debtor was, and is, unhappy with her counsel. She understood she only had to make 48 monthly payments of $398 and she has done so. She is no longer employed due to injury and

---

[1] According to Docket No. 4, Greentree Servicing LLC became Ditech Financial LLC effective September 1, 2015.

age, and cannot make further payments to Ditech. The Debtor's counsel is unhappy with his client and has moved to withdraw. With this background, the Court held a status conference on April 26, 2017, at which the Court asked for briefs from counsel for the Debtor, from the Debtor herself, and from counsel for Ditech. Each of the three provided briefs or statements to the Court.

The Debtor's counsel argues the hardship discharge resulted in an elimination of personal liability to Ditech. He acknowledges Ditech's lien continues on the mobile home but argues that Ditech is bound by the terms of the Plan and cannot insist on greater payment than the amount of the allowed secured claim that has not yet been fully satisfied. The Debtor's counsel argues on behalf of his client that the Court should exercise its authority under 11 U.S.C. § 105 to release Ditech's lien on the Debtor's mobile home without payment of the balance of the allowed secured claim because she has paid the 48 months provided for in the Plan and simply can pay no more. Ditech agrees the Debtor's personal liability has been discharged and also agrees it retains a lien on the mobile home only to the extent of the allowed secured claim not fully satisfied. Ditech states in its brief that it stands ready to accept the relief requested in this adversary proceeding which is a lien on the mobile home in an amount not to exceed $3,007.23. The Debtor individually wrote a letter to the Court, arguing that Ditech's lien should be released now. She argues the Plan only calls for 48 monthly payments and she made every one. She points out that Greentree, now Ditech, did not object to the terms of the Plan or point out that mathematically the Plan could not be performed. She notes the Trustee did not object to confirmation of the Plan and/or point out to the Court that mathematically the Plan could not be performed. She alleges that if there is any error in the Plan, it is her attorney's error and not hers, and she should not be responsible for the balance due to Ditech.

4

# LAW

Under the Bankruptcy Code, "[t]he provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan." 11 U.S.C. § 1327(a). The question in this case is which provision of the Plan is binding when the provisions are inconsistent. Specifically, the question for the Court is whether the Debtor's proposed 48-month term governs, resulting in a complete satisfaction of the secured claim, or whether the allowance of Ditech's claim and the payment provided therefore in the Plan governs, even though the Debtor would need to make more payments than required under the Plan in order to satisfy the claim.

### *Term of the Plan*

The Plan states as follows with respect to the term of the Plan:

> Debtor will pay the sum of $398 per month to Trustee by … direct payment(s) for the applicable commitment period of 48 months, unless all allowed claims in every class, other than long-term claims, are paid in full in a shorter period of time. The term of this Plan shall not exceed 60 months. …

The Bankruptcy Code provides for both a term of the plan as well as an applicable commitment period, and those two concepts are not interchangeable.

The term of a plan is provided for in Section 1322(d). It states that if the debtor's current monthly income exceeds the median income for that state and that size family, the plan may not provide for payments over a period that is longer than five years. If the current monthly income of the debtor is less than the median income for that size family in that state, the plan may not provide for payments over a period that is longer than three years "unless the court, for cause, approves a longer period, but the court may not approve a period that is longer than 5 years." 11 U.S.C. § 1322(d)(2). So the term, i.e., length, of a plan is fixed at three years for a below median

5

income debtor, unless the court authorizes a different term, or length of the plan, so long as the term is no more than five years.  The term of the plan, though, is different from the applicable commitment period which is defined in 11 U.S.C. § 1325(b)(4).  The applicable commitment period is either three years for a below median income debtor or five years if the current monthly income of the debtor is greater than the median income in that state and for that size family.  The applicable commitment period may only be less than three years or five years if the plan provides for payment in full of all allowed unsecured claims over a shorter period of time.  11 U.S.C. § 1325(b)(4)(B).  Because both the term and applicable commitment period are presumptively three years for a below median income debtor and five years for an above median income debtor, parties can confuse the concepts.  But, the Eleventh Circuit in <u>Whaley v. Tennyson</u>, 611 F.3d 873 (11th Cir. 2010), explained that Sections 1325(b)(4) and 1322(d) are not conflicting and should be read in concert.  The court pointed out, "Section 1322(d) delineates the maximum periods of time for a Chapter 13 bankruptcy while § 1325(b)(4) sets out the minimum periods of time for Chapter 13 bankruptcy, with both the minimums and maximums contingent upon the debtor's classification as an above median or below median income debtor … Thus, it is clear that both  § 1322(d) and § 1325(b)(4) are necessary to determine the proper time period that … [a] debtor must stay in Chapter 13 bankruptcy." <u>Id.</u> at 878.

In this case, the form plan used by this District calls for the debtor to fill in the number of months of the <u>applicable commitment period</u>, not the number of months for the term of the plan.  The applicable commitment period should almost always be filled in with either 36 or 60, as only if a plan is proposing to pay creditors in full in less than the standard applicable commitment period could the number be less.  The form plan in this District calls for a general "term of the plan" that shall not exceed 60 months.  Local practice in this District has consistently construed the form plan to require that the term be whatever is necessary to make the payments called for

6

in the plan, so long as that term does not exceed 60 months. Confirmation of the plan is deemed to be an approval of a term beyond the maximum provided in 11 U.S.C. § 1322(d) for a below median income debtor. In this case, the Debtor was a below median income debtor and her applicable commitment period would have been 36 months under Section 1325. The maximum term of the plan under Section 1322(d) would have also been 36 months. It appears that the Debtor was attempting to extend the maximum term of the Plan to 48 months, although what the Plan actually provided was for a 48-month applicable commitment period, which is not proper on these facts.

### *Allowed Secured Claim*

Paragraph 6(A)(ii)(b) of the Debtor's confirmed Plan provides that the Debtor will make payments to Ditech at the monthly rate of $348 in order to pay Ditech $18,132 as the replacement value of the mobile home plus an interest rate of 5%. Under Section 1327 and the provisions of the Plan, upon confirmation, the valuation, the interest rate and the monthly payment amount became binding on both the Debtor and the creditor. This provision of the Plan was appropriately confirmable under 11 U.S.C. § 1325(a)(5) which provides that

> … with respect to each allowed secured claim provided for by the plan–
> …
> (B)(i)   the plan provides that—
> (I) the holder of such claim retain the lien securing such claim until the earlier of—
> (aa) the payment of the underlying debt determined under nonbankruptcy law; or
> (bb) discharge under section 1328; …

The Bankruptcy Court's order confirming this Plan was a final judgment. United Student Aid Funds, Inc. v. Espinosa, 130 S. Ct. 1367, 1376 (2010). The Debtor's counsel and Ditech agree that the hardship discharge granted to the Debtor under Section 1328 does not discharge the lien of Ditech which was unpaid under the terms of the Plan. The Debtor, however, argues that

7

Ditech's secured claim should be deemed satisfied in full. The Debtor does not cite to any particular case law or legal argument for the proposition.

The Court notes Section 1325(a)(5) provides that the holder of a secured claim must retain its lien until the earlier of payment of the underlying debt determined under nonbankruptcy law or discharge under Section 1328. This reference to "discharge under Section 1328" does not specify a discharge only under Section 1328(a), which is granted after completion of all plan payments. The hardship discharge is provided for in Section 1328(b). Neither the parties' research nor the Court's research located any case on the question of whether a hardship discharge qualifies as a discharge satisfying a secured lien under Section 1325(a)(5). But see In re Lizzi, 2015 WL 1576513 at *6 (Bankr. N.D.N.Y. April 3, 2015) (where the court noted in dicta "claims of secured and priority creditors will survive a hardship discharge.") Commentators generally agree, however, that if the allowed secured claim is not fully satisfied due to a hardship discharge, the lien will continue to exist to the extent the claim has not been fully paid. See 8 Collier on Bankruptcy, ¶ 1328.03[3], p. 1328-28 (16th ed. 2016); Hon. W. Homer Drake, Jr., Hon. Paul W. Bonapfel & Adam M. Goodman, Chapter 13 Practice and Procedure, § 21:21 (2017). The commentators' opinion is consistent with 11 U.S.C. § 1328(b) which provides that a hardship discharge only discharges unsecured debts, while the discharge provided in Section 1328(a) after completion by the debtor of all payments provides for a discharge of "all debts provided for by the plan …" with certain exceptions. The Court therefore concludes the hardship discharge provided to the Debtor in this case did not discharge the secured claim of Ditech as allowed under the Plan.

To make the payments called for under the Plan including payment of the secured claim, the Debtor would have needed to pay a total of $22,476.20 under the Plan rather than the $19,104.00 that would be called for if the term of the Plan were only 48 months. In a case such

as this where the Court is confronted with seemingly inconsistent provisions, the Court must interpret the confirmed Plan "under the rules governing the interpretation of contracts". See In re Dow Corning Corporation, 456 F.3d 668, 676 (6th Cir. 2006); In re Heartland Steel Inc., 389 F.3d 741, 744 (7th Cir. 2004); In re Hamilton, 2017 WL 1533382, *2 (Bankr. D.N.M. April 27, 2017). Just like with contracts, "[a] confirmed plan is ambiguous if it is capable of more than one reasonable interpretation … Generally, where an ambiguity exists courts consider extrinsic evidence to determine the parties' intent." Hamilton, 2017 WL 1533382, at *3 (cites omitted). Because this Plan is capable of more than one reasonable interpretation, the Court finds that the Plan is ambiguous.

Various rules for interpreting ambiguous contracts and plans exist and are applicable here. The first is that the plan should be interpreted to comply with the Bankruptcy Code. Id. at *4; see also Forklift LP Corp. v. iS3C (In re Forklift LP Corp.), 363 B.R. 388, 394-98 (Bankr. D. Del. 2007); In re Monclova Care Center Inc., 254 B.R. 167, 173 (Bankr. N.D. Ohio 2000). Here, a term of the Plan greater than the 48 months proposed but less than 60 months is not in violation of the Bankruptcy Code. Confirming a plan which pays a secured creditor less than the established value of the property would, however, violate the Bankruptcy Code, specifically Section 1325(a)(5). This rule of construction points to the need to pay the allowed secured claim, even if it makes the term more than 48 months.

A second rule of construction is that the plan should be interpreted in light of circumstances and the principal purposes of the plan. Hamilton, 2017 WL 1533382, *4-5. Here, the principal purpose of the Debtor's Chapter 13 Plan was to pay in full the value of the mobile home. The Debtor had attempted to redeem the mobile home but could not obtain the funds for redemption. She converted her case to one under Chapter 13 of the Bankruptcy Code in order to pay this value over time. She intended to and understood she would pay the value of the mobile

9

home to the lender. Construing the Plan to require payment to Ditech is consistent with the Plan's purpose. Moreover, the practice in this District and the common interpretation of Paragraph 1 of the form plan is that the number to be placed in the blank was not meant to limit the term of the plan but meant to specify the applicable commitment period. The practice here is that the term of the plan is whatever is necessary to make the payments offered under the plan, so long as the term does not exceed 60 months. So the circumstances and common usage of the Plan also point to paying Ditech its claim.

The final rule of construction applicable here is that the plan should be construed against the drafter. In re Forklift LP Corp., 363 B.R. at 397; Vidal v. Head (In re Vidal), 234 B.R. 114, 119 (Bankr. D.N.M. 1999). The Debtor and her counsel drafted the Plan and the Court will therefore construe any ambiguity against the Debtor.

Using the rules of contract construction described above and made applicable to Chapter 13 plans, the Court concludes the Debtor must pay the remaining amount due on the allowed claim of Ditech for the lien on the mobile home to be satisfied. Ditech has agreed in its pleadings with Plaintiff's contention that the amount owed is $3,007.23.

## *Section 105*

The Debtor requests the Court eliminate the remaining balance due on her mobile home for equitable reasons including that she did not understand she had to make more than 48 payments and she does not have the wherewithal to complete the payments. The Debtor's counsel framed the issue for the Court as using its authority under 11 U.S.C. § 105 which provides, "The Court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." The Supreme Court has pointed out, however, that Section 105(a) "does not allow the bankruptcy court to override explicit mandates of other sections of the Bankruptcy Code." Law v. Siegel, 134 S. Ct. 1188, 1194 (quoting 2 Collier on

Bankruptcy ¶ 105.01[2], p. 105-6 (16th ed. 2013)). Indeed, the Supreme Court has … "long held that 'whatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of' the Bankruptcy Code." Law, 134 S. Ct. at 1194 (citing Norwest Bank Worthington v. Ahlers, 45 U.S. 197, 206 (1988)). The Debtor's request that the Court eliminate Ditech's remaining lien is in conflict with the Bankruptcy Code which requires that a secured creditor retain its lien until it has been satisfied. 11 U.S.C. § 1325(a)(5).

Nevertheless, the Court notes that each party involved in this issue failed to act at all, or to act appropriately. The Debtor's counsel failed to assist his client in proposing a plan that was consistent and accomplished his client's goals. Ditech failed to note or object that 48 months was an insufficient time to perform the Plan. The Chapter 13 Trustee failed to identify or notify the Court that the Plan could not be performed as written. The Court will therefore exercise its authority under Section 105 to implement its decision here.

First, the Court notes that Ditech has agreed in its pleadings that its lien is limited to $3,007.23. Ditech has not requested any additional amount for interest. The Court will therefore clarify to the extent necessary using its authority under 11 U.S.C. § 105(a), that no interest is due on this principal sum. Because Ditech never objected to the Plan at the time of confirmation to point out that it was not feasible because of the 48-month limitation for the term, it is appropriate that it bear some responsibility for that failure. Nevertheless, the elimination of additional interest on this claim cannot last for an undetermined amount of time. The Court therefore orders that the Debtor may satisfy the lien by payment in full of $3,007.23 so long as that payment is made within 120 days of the date hereof. If the $3,007.23 is not paid in full by that date, interest at the Plan rate of 5% will begin to accrue on any remaining unpaid balance.

The Court will also exercise its authority under 11 U.S.C. §§ 105 and 329(b) and direct the Debtor's counsel to disgorge the $1,000 fee he received for services in the Chapter 13 case.

11

The Court recognizes that counsel provided some services that benefitted the Debtor and that he most certainly has incurred actual time and expenses in excess of $1,000. Nevertheless, the Debtor's misunderstanding and ambiguity in the Plan are a result of the Debtor's counsel's drafting and he should also bear some responsibility. The Court hereby directs counsel to pay $1,000 directly to Ditech within 30 days of the date hereof, which Ditech will apply to the outstanding balance of $3,007.23. Thus, the balance remaining for the Debtor to pay is $2,007.23.

Finally, to the extent the Chapter 13 Trustee may assert any additional trustee fees, the Court bars the collection of any further such fees. It is practice in this Division that the Trustee recommends whether a plan be confirmed. The Court relies on the Trustee's recommendation for confirmation that the Plan meets the confirmation standards of Section 1325. Here, the Trustee recommended the Plan for confirmation even though the Plan itself was ambiguous as to whether the confirmation standards were met.

### CONCLUSION

Judgment in this adversary proceeding is therefore for Plaintiff. Ditech[2] has a lien of $3,007.23 on the Debtor's mobile home. Counsel for the Debtor is to pay Ditech $1,000 within 30 days of the date hereof and to file a confirmation of that payment on the docket. If the Debtor pays the balance of $2,007.23 within 120 days of the date hereof, Ditech's lien will be deemed satisfied and Ditech is directed to file a satisfaction of such lien. If the lien is not paid within 120 days of the date hereof as provided, interest at the amount of 5% per annum will begin to accrue on the balance.

### ### END OF ORDER ###

---

[2] Because Ditech is the successor to Greentree, the Court treats this judgment as entered as to both Defendants.

**DISTRIBUTION LIST**

Joyce Hill
425 N. Cobb Parkway
Acworth, GA 30101

Edward F. Danowitz
Danowitz Legal, P.C.
300 Galleria Pkwy NW, Ste 960
Atlanta, GA 30339

Greentree Servicing, LLC
1400 Turbine Dr, Ste 200
Rapid City, SD 57703

Keith S. Anderson
Bradley Arant Boult Cummings, LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, AL 35203

Ditech Financial LLC
3000 Bayport Dr, Ste 880
Tampa, FL 33607

Thomas S. Kenney
John A. Medina
Kenney & Medina, P.C.
3302 McGinnis Ferry Rd, Ste 100
Suwanee, GA 30024

Nancy J. Whaley
Standing Chapter 13 Trustee
303 Peachtree Center Ave, Ste 120
Atlanta, GA 30303